Filed 9/15/25  P. v. Gonzales CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064000 |
| v. | (Super. Ct. No. 21NF3171) |
| DAVID MICHAEL GONZALES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Robert A. Knox, Judge. Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　\*　　　\*

Defendant David Michael Gonzales was convicted of two counts each of felony vandalism and assault with a firearm relating to an incident at a liquor store. The only issue on appeal is whether the trial court erred by imposing the upper term of four years, rather than the midterm of three years, on one of the assault with a firearm counts. We conclude that the court properly relied on a prior conviction as the basis for sentencing Gonzales to the upper term, and accordingly, the court did not abuse its discretion.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Relevant Facts

On September 2, 2021, Gonzales crashed his car into a liquor store located in a strip mall in Anaheim. The crash caused extensive damage to the store, in excess of $20,000.

One of the store's employees, M.S., testified that Gonzales exited the car and pointed a gun at him. He was frightened and thought Gonzales might shoot him. Gonzalez took M.S.'s coworker, S.S., outside. Once they left, M.S. borrowed a customer's phone to call the police.

S.S. was shocked and nervous once Gonzales showed him the gun. He testified that Gonzales pointed the gun at him and pulled the trigger two or three times, but the gun failed to fire. S.S. ran away and called the police. The interaction at the store was captured on surveillance video and played for the jury at trial.

Police found Gonzales near the strip mall, holding a firearm and striking the windows of a business, which were damaged. The police officer arrested him. The firearm Gonzales was holding was not loaded, and he was not carrying any ammunition. Once in custody, Gonzales declined to give a statement and requested an attorney.

At trial, numerous witnesses testified for Gonzales. A neurologist, Dr. Antoine Mitri, examined him approximately three months after the accident. Gonzales complained of headaches and informed Mitri of the car accident. Mitri's exam was unremarkable and he diagnosed Gonzales with tension headaches, which are not a symptom of concussion caused by a car accident. An MRI was also normal, but a person with a concussion may have a normal MRI. Mitri saw Gonzales again approximately three months later, and Mitri again diagnosed tension headaches. Mitri testified that he believed Gonzales had suffered a cerebral concussion as a result of the automobile incident, and one of the symptoms of concussion was memory loss.

A car mechanic also testified regarding the car owned by Gonzales's mother, which Gonzales was driving on the night of the incident. The mechanic repaired the car several times, including on August 27, 2021, when a master cylinder was replaced due to a sinking brake pedal.

Gonzales also testified. As relevant here, he testified he was convicted of a felony in 2001. He had also purchased a gun and kept it at home. He brought the gun with him when he took his mother's car out for what he described as a test drive. As he was driving, he noticed the car had a "shimmy" when braking. He decided to pull into a parking lot. As he entered the strip mall's lot, he experienced a "skipping sensation coming from the front of the car" when he tried to brake. He made a turn and shortly thereafter, the car crashed. After impact, the next thing he remembered was his head hitting the steering wheel and looking down and seeing glass shards on the ground.

Gonzales claimed he had no memory of the events inside the liquor store, including threatening the employees, and he denied hitting the glass of another business with his gun at the time the police found him. He

3

said the gun was unloaded. He sought medical attention three weeks after the crash for a headache.

*B. Procedural History*

The operative information charged Gonzales with ten counts: attempted robbery (Pen. Code, §§ 664, 211, 212.5)[1] (counts one and two); assault with a deadly weapon (§ 245, subd. (a)(1)) (counts three and four); criminal threats (§ 422, subd. (a)) (counts five and six); felony vandalism (§ 594, subds. (a), (b)(1)) (counts seven and eight); assault with a firearm (§ 245, subd. (a)(2)) (counts nine and ten). Numerous enhancements were also alleged. As relevant here, they included a prior serious and violent felony conviction (§§ 667, subds. (d), (e), 1170.12, subds. (b), (c)(1)); and a prior serious felony conviction (§ 667, subd. (a)(1)).

Prior to trial, the court dismissed the two assault with a deadly weapon counts. The prosecution also dismissed the criminal threats count as to M.S., count five. Numerous enhancements were also dismissed.

At the conclusion of trial, the jury found Gonzales not guilty of the remaining criminal threats count, and guilty of counts seven through ten (felony vandalism and assault with a firearm). The jury could not reach a verdict on the two attempted robbery counts, and the prosecution subsequently dismissed those counts.

Both parties submitted sentencing briefs, and the probation officer prepared a report. The prosecution recommended a sentence of six years and the defense sought probation. The defense also submitted a motion

---

[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.

to strike Gonzales's strike prior pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

Prior to sentencing, Gonzales admitted the prior conviction allegations. The court granted the defense's *Romero* motion and struck the prior conviction. The court imposed four years, the upper term, on count ten, the assault with a firearm count as to S.S. The court also imposed two years for count eight, felony vandalism, to run concurrently to the sentence imposed for count ten. Sentence on the remaining counts, seven and nine, was stayed pursuant to section 654. The aggregate term imposed was four years.

Gonzales now appeals.

## DISCUSSION

### I.

### RELEVANT LAW

As relevant here, section 1170, subdivision (a)(3) states that "[i]n any case in which the sentence prescribed by statute for a person convicted of a public offense is a term of imprisonment in the state prison, or a term pursuant to subdivision (h), of any specification of three time periods, the court shall sentence the defendant to one of the terms of imprisonment specified unless the convicted person is given any other disposition provided by law . . . ." Section 1170 also provides that the court shall apply the Judicial Council's sentencing rules. (§ 1170, subd. (a)(3).)

Section 1170, subdivision (b)(2), states that where a statute specifies three possible terms, "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been

5

stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." Rule 4.420(b) of the California Rules of Court is consistent with this provision, providing that "[t]he court may only choose an upper term when (1) there are circumstances in aggravation of the crime that justify the imposition of an upper term, and (2) the facts underlying those circumstances have been (i) stipulated to by the defendant, (ii) found true beyond a reasonable doubt at trial by a jury, or (iii) found true beyond a reasonable doubt by the judge in a court trial."

The court may impose the upper term "based on a single, properly proven aggravating circumstance if, in the court's discretion, that circumstance alone justifies a sentence exceeding the middle term." (*People v. Lynch* (2024) 16 Cal.5th 730, 764, italics omitted (*Lynch*).) The facts upon which the court relies must be reasonably related to the sentencing decision. (Cal. Rules of Court, rule 4.408(a).)

## II.

### STANDARD OF REVIEW

We review the trial court's sentencing decision for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847, overruled on other grounds by *Lynch, supra,* 16 Cal.5th at p. 753.) "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.'" (*Sandoval,* at p. 847.) "[A] trial court will abuse its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid.*) "'The burden is on the party attacking the sentence to clearly show that the sentencing decision

was irrational or arbitrary.'" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977–978.)

## III.

## NO ABUSE OF DISCRETION[2]

*A. Sentencing Hearing*

As noted above, after the verdict and before sentencing, Gonzales admitted he had a prior conviction in Arizona. The Arizona conviction, in 2001, was for two counts of attempted sexual assault, for which Gonzales was sentenced to 25 years probation, which was later revoked. He was sentenced to four and a half years in state prison. This was part of a lengthy criminal record that stretched back to 1983.

At the sentencing hearing, the court heard from numerous people who spoke about Gonzales's good character and that he was a good son with a mother who was ill.

The court then considered probation eligibility, and ultimately determined Gonzales was either statutorily ineligible or presumptively ineligible. Discussing the facts of the instant crimes, the court noted it had "considered factors limiting Mr. Gonzales's culpability. So there's no evidence that's been presented to the Court that Mr. Gonzales participated in this crime under circumstances of great provocation, coercion, or duress not amounting to a defense. There is some evidence that the crime was committed due to a mental condition not amounting to a defense, as we heard

---

[2] The Attorney General's argument that Gonzales forfeited this argument has merit. (*People v. Kidane* (2021) 60 Cal.App.5th 817, 826.) In the interests of justice, we address the issue on the merits.

evidence or testimony that he was suffering from symptoms of a concussion at the time of the incident, and considering the risk needs assessment that the probation officer did . . . is some indication of risk for reoffense."

When considering the relevant factors under California Rules of Court, rule 4.414, the court found: "As I mentioned, in this case, Mr. Gonzales endangered the lives of other people and himself. The victims feared for their lives, and there was extensive damage to the liquor store that he drove his car through. Mr. Gonzales was armed and used a firearm. The victims were vulnerable in that they were potentially in the path of Mr. Gonzales's vehicle and apparently unarmed themselves when the crime occurred. There was testimony that there was emotional injury suffered by the victims as a result of the incident. The degree of monetary loss to the liquor store was substantial. Mr. Gonzales was the sole participant—sole active participant in the crime. And the Court has considered that the crime may have been committed because of an unusual circumstance that is unlikely to occur. [¶] The Court has also considered facts relating to Mr. Gonzales. Number one, according to the probation report, his prior convictions are numerous. Number two, his prior performance on probation was unsuccessful. Number three, he does appear willing to comply with the conditions and terms of probation, and he does also appear able to comply in that he has maintained a clean record for the past 20-plus years. The Court is also considering the fact that his imprisonment is going to have an adverse impact on his dependents and that impact is probably significant. It appears Mr. Gonzales is remorseful, however, given what happened in this case, there's also the possibility that he could be a danger to other people."

After ultimately denying probation, the court granted the defense's *Romero* motion as to the Arizona conviction. The prosecution had

argued this conviction the equivalent of attempted oral copulation by force under California law and therefore a strike offense. The court noted it had considered the statutory mitigating factors and found that two mitigating factors applied: remoteness in time of the prior conviction and that the firearm used in the instant case was unloaded. Although Gonzales has a lengthy criminal history, it had been more than 20 years since his last arrest. He was 61 years old at the time of sentencing, and numerous people had described his good character. The court believed, despite the dangerous nature of Gonzales's acts, they were "somewhat of an aberration." The court found that pursuant to section 1385, subdivision (c), Gonzales fell outside the intent and objectives of section 667, subdivisions (d) and (e)(1). Accordingly, the court struck the 2001 Arizona prior for purposes of sentencing.

Discussing whether to impose the middle or upper prison term for count ten, the assault with a firearm count as to S.S, the court stated: "Pursuant to California Rules of Court 4.420(b), the Court may only choose an upper term when: One, there are circumstances in aggravation of the crime that justify the imposition of an upper term; and, two, the facts underlying those circumstances have been: One, stipulated to by the defendant; two, been found through beyond a reasonable doubt by a trial -- at jury trial; or, three, found true beyond a reasonable doubt by the judge in a Court trial. [¶] California Rule of Court 4.420(c) permits the Court to use a prior conviction to impose a particular term if the Court strikes the punishment for that enhancement. And here the Court has stricken the 2001 Arizona prior as an enhancement, and, accordingly, the Court may use that prior to impose an aggregate term of imprisonment."  The court continued: "The Court has considered circumstances in aggravation pursuant to California Rule of Court 4.421(a) and (b). So the factors relating to the crime

9

are that: The crime involved the threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness; and, number two, the defendant was armed with a handgun. [¶] The factors relating to the defendant are that: He engaged in violent conduct indicating a serious danger to society; that his prior convictions as an adult are numerous; that he served a prior prison term for a 2001 Arizona conviction; and that his prior performance in Arizona was unsuccessful.

"The Court has also considered circumstances in mitigation pursuant to California Rule of Court 4.423(a) and (b). Factors in mitigation pursuant to 4.423(a) relating to the crime indicate that, according to factor ten, the firearm was unloaded, which is a factor in mitigation. And under 4.423(b), relating to the defendant, based on what the Court heard, it may be possible that he was experiencing a mental or physical condition at the time of the crime such as a concussion or a mechanical malfunction with his vehicle. [¶] The Court's tentative decision is, for Count 10, the crime of violating Penal Code 245(a), to impose the upper term of four years in state prison pursuant to California Rule of Court 4.420(c) which permits the use of the 2001 Arizona prior to impose an aggravated term."

The court then went on to review its tentative as to the remaining counts, and asked if counsel wished to be heard on the tentative. Defense counsel asked the court to consider suspending prison time. The court then imposed the tentative as the sentence.

B. *Gonzales Has Failed to Demonstrate an Abuse of Discretion*

Gonzales, while citing the appropriate standard of review, asks us to misapply it by reconsidering and reweighing the factors the court considered but reaching a different conclusion. For example, Gonzales points to, among others, the fact that no physical injury occurred, the firearm was

10

unloaded, he may have suffered a concussion, and the crash might not have been an intentional act. Gonzales argues these facts "precluded imposition of the upper term."

Gonzales is incorrect. The court, as Gonzales admits, considered these facts and others. He offers no authority for the proposition that this court may simply choose to give particular emphasis to the facts that might weigh in his favor while ignoring the rest. No such authority exists.

The rest of Gonzales's argument appears to boil down to that because the court relied on the remoteness in time of the Arizona conviction to grant the *Romero* motion, it "makes no sense" to rely on it to impose the upper term.

First, Gonzales has failed to cite to any similar cases where a trial court was found to have abused its discretion by using the same factor to strike a prior and to impose the upper term. Second, Gonzales is wrong that the court's decision somehow belies all reason and logic, and therefore rises to the level of an abuse of discretion.

To the contrary, it was perfectly reasonable for the court to reach the conclusions it did. Under section 667, subdivision (e)(1), if the court had denied the *Romero* motion, the base term would have doubled from three years to six. Finding a term of six years excessive while finding four years appropriate was not contradictory or illogical.

As noted above, "a single, properly proven aggravating circumstance" is sufficient to impose the upper term. (*Lynch, supra*, 16 Cal.5th at p. 764.) The court, extensively and on the record, considered all of the appropriate factors, and used the prior conviction, a permissible factor, to impose the upper term. There was no abuse of discretion.

11

## DISPOSITION

The judgment is affirmed.


                                        MOORE, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SANCHEZ, J.